IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MALIBU MEDIA, LLC,

                          Plaintiff,                Case No. 15 C 11808

              v.

                                                    Judge Harry D. Leinenweber
MATTHEW THAL,

                          Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Malibu Media, LLC's ("Malibu Media") Motion to Dismiss Defendant Matthew Thal's ("Thal") Counterclaims [ECF No. 26] pursuant to FED. R. CIV. P. 12(b)(6). For the reasons stated herein, the Motion is granted.

## I. BACKGROUND

The following facts are contained in Thal's Answer and Counterclaims and are presumed true for purposes of deciding the motion to dismiss. *See, Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). The Court also takes judicial notice of background facts. *See, Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

Malibu Media brought a copyright infringement lawsuit against Thal. The company accuses Thal of distributing via BitTorrent 24 of its copyrighted pornographic movies. Thal

counterclaims, alleging essentially that Malibu Media is a copyright "troll," or an entity that "makes more income from suing and settling with copyright infringers than it does from the licensed distribution or display of its works." *See,* ECF No. 24 (Def.'s Countercls.) ¶¶ 3-4, 20. *See also,* Matthew Sag, *Copyright Trolling, An Empirical Study,* 100 Iowa L. Rev. 1105, 1108 (defining copyright trolling) and *Malibu Media, LLC v. Doe,* 2015 U.S. Dist. LEXIS 87751, at *9-10 (S.D.N.Y. July 6, 2015) (citing Sag and taking note of Malibu Media's corporate strategy).

As is relevant for the purposes of this Motion, Thal alleges that Malibu Media "seeded" its own movies on BitTorrent. *See, Malibu Media, LLC v. Doe,* 291 F.R.D. 191, 193-94 (N.D. Ill. 2013) (explaining how BitTorrent works). That is, Malibu Media was the original uploader of its movies on BitTorrent, making the content available "in order to encourage BitTorrent users to download the seeded works, and thereby become more lucrative targets for Malia Media's copyright infringement lawsuits." Def.'s Countercls. ¶ 19. According to Thal, this behavior "entrap[s] individuals into downloading copies of Malibu Media's works" and so violates two consumer protection statutes under Illinois law, the Illinois Uniform Deceptive Trade Practices Act

(the "IDTPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"). *Id.* at ¶¶ 49-60.

## II.  <u>ANALYSIS</u>

Malibu Media raises five separate arguments as to why Thal's counterclaims should be dismissed under Rule 12(b)(6). They include: (1) the Copyright Act preempts Thal's state-law claims; (2) the ICFA does not reach Malibu Media's out-of-state conduct; (3) Thal cannot make out the elements of an ICFA cause of action; (4) Thal did not plead sufficient facts; and (5) Thal's IDTPA claims fails because Thal has not requested injunctive relief nor alleged any likely future injury. The first two arguments, if accepted, would require dismissal with prejudice, and the Court addresses them first.

### A.  **Copyright Preemption**

The Copyright Act does not preempt Thal's claims. In arguing that it does, Malibu Media seems to confuse Thal's counterclaims with its own case for copyright infringement.

In a usual case where the issue of copyright preemption arises, a copyright owner brings suit against an infringer, alleging violations of the Copyright Act and some state statutes. In such a situation, the defendant may argue that the state claims are preempted by the Copyright Act. *See, e.g., Defined Space, Inc. v. Lakeshore E., LLC,* 797 F.Supp.2d 896,

- 3 -

897-98 (N.D. Ill. 2011) (photographer sued the defendants for violations of the Copyright Act and Illinois consumer protection statutes when they used his photographs without attribution); *Natkin v. Winfrey,* 111 F.Supp.2d 1003, 1005 (N.D. Ill. 2000) (similar); and *Cyber Websmith, Inc. v. ADA,* No. 09-CV-6198, 2010 U.S. Dist. LEXIS 80206, at *1-3 (N.D. Ill. Aug. 4, 2010) (suing for copyright infringement and violation of the IDTPA on the allegation that the defendants were "operating Internet websites comprised of HTML website pages, text, graphics, and photographs that have been copied directly from Plaintiff's copyrighted website templates"). Courts in the Seventh Circuit apply a two-part test to see if the state-law claims indeed are preempted. *See,* 17 U.S.C. § 301(a) and *Balt. Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 674 (7th Cir. 1986) (laying out the test). In general, a state law is not preempted when it regulates conduct that is "qualitatively distinguishable from that governed by federal copyright law – *i.e.,* conduct other than reproduction, adaptation, publication, performance, and display." *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 910 (7th Cir. 2005).

This case is far from the typical copyright preemption case. Thal is not claiming that he owns the copyright to anything, including the movies that he is accused of

distributing. He is not bringing a copyright infringement claim against Malibu Media. Neither is he alleging that Malibu Media violated any right qualitatively similar to a "reproduction, adaptation, publication, performance, or display" right as guaranteed under the Copyright Act. Rather, Thal alleges that Malibu Media entraps others into violating copyright law by making its movies available on a medium known for facilitating piracy. The allegation is analogous to that in which a shopper complains that a store owner places easy-to-break goods in hard-to-see places and then charges people for damaged goods. The claims have little to do with copyright law and are not preempted by the Copyright Act.

Malibu Media rests its preemption case on the argument that Thal's counterclaims "are nothing more than an attempt to escape liability for copyright infringement." Even if this were so, the company has cited no case showing that this is a basis for finding preemption. Moreover, it is not true that Thal would avoid liability for his alleged copyright infringement if his own counterclaims were allowed to proceed. Because copyright infringement does not require intent to infringe, Thal may be liable as an infringer even if Malibu Media violated consumer protection statutes in the way Thal alleges. *See, Bennett v. Flash 1-Hour Foto,* No. 94 C 1322, 1994 U.S. Dist. LEXIS 6704, at

*5-6 (N.D. Ill. May 17, 1994) (stating that "intent to infringe is not relevant to infringement" and "knowledge of a lack of authorization is not required for a violation of copyright law").

## B. Jurisdictional Limits of the ICFA

Malibu Media also argues that the ICFA does not reach the conduct that Thal complains of. This is because "Plaintiff is a California company, and its business decisions and practices are primarily made and carried out in California." It is true that the ICFA does not "apply to fraudulent transactions which take place outside Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill. 2d 100, 184-85 (2005). However, a transaction is not considered to have occurred outside of Illinois "if the circumstances relating to the transaction occur primarily and substantially within" the state. *Id.* at 853. In particular, the ICFA at least reaches transactions where the place of injury or deception is within Illinois. *See, id.* (holding that the ICFA encompasses a "broader understanding of an in-state transaction" than just in-state injury or deception).

The Court finds *R. Rudnick & Co. v. G.F. Prot., Inc.,* No. 08 C 1856, 2009 U.S. Dist. LEXIS 3152 (N.D. Ill. Jan. 15, 2009), instructive for determining whether Thal's counterclaim is within the scope of the ICFA. In *Rudnick,* the plaintiff

complained that the defendant violated the ICFA when it "engaged in the sending of unsolicited advertisement facsimiles ('faxes') to Rudnick and at least 40 other citizens of Illinois." *Id.* at *1. The defendant argued, as Malibu Media did in this case, that the ICFA does not apply because the transaction did not occur in Illinois. *Id.* at *6. Judge Joan Gottschall rejected the argument, finding that what matters was that the faxes were received by consumers in Illinois, and thus the harm from the allegedly unfair practice was felt within the state. *Id.* As Judge Gottschall stated, "That the faxes may have originated in another forum is of no consequence, for as the ICFA's name implies, the focus is on the harm to (and location of) the *consumer*." *Id.*

Here, as in *Rudnick,* the harm of Malibu Media's alleged misconduct is felt by the people of Illinois. Thal alleges that Malibu Media makes its own content available on BitTorrent and then "waits and watches BitTorrent use" until a given IP address commits "threshold infringement." Def.'s Countercls. ¶¶ 50-52. Malibu Media then initiates legal action against the internet user associated with the IP address, "leveraging the inherent cost of federal litigation, combined with the potential embarrassment of defendants" to obtain favorable outcomes from the litigation. *Id.* ¶¶ 3-4, 52. This "entrapment scheme"

ensnares persons like Thal, who is a resident of Illinois, and harms them by forcing them to defend against the litigation (or settle). The harm is thus to the people of Illinois and the location of the harm is felt in Illinois. Therefore, the conduct is within the jurisdictional limit of the ICFA.

### C. Elements of the ICFA

Having disposed of Malibu Media's arguments that would require dismissal with prejudice, the Court next addresses those that leave room for re-pleading. Malibu Media raises three such arguments, the first of which is that Thal has not pleaded the elements of the ICFA.

"A plaintiff is entitled to recovery under ICFA when there is unfair or deceptive conduct." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010). Conduct is deceptive "if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome Plc,* 246 F.3d 934, 938 (7th Cir. 2001). Conduct is unfair if it (1) violates public policy, (2) is so oppressive as to leave the consumer with little alternative except to submit to it, and (3) injures the consumer. *Robinson v. Toyota Motor Credit Corp.,* 201 Ill. 2d 403, 417-18 (2002). However, not all three criteria need to be met to support a finding of unfairness. *Id.* at 418. "A practice may be unfair because of the degree to which it meets

one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Cheshire Mortgage Services, Inc. v. Montes,* 223 Conn. 80, 106, 612 A.2d 1130, 1143-44 (1992)).

In this case, Thal's contention that Malibu Media engaged in deceptive or unfair conduct centers around the allegations that the company or its agents "intentionally seeded Malibu Media's works" while concealing the company's identity as the seeder of the materials. Def.'s Countercls. ¶ 15. According to Thal, the act is deceptive because it "creates the wrongful impression in other BitTorrent users that they are free to download the materials without consequence." However, the two allegations are at odds with one another. Users may think that "they are free to download the materials without consequence" only if they have some reasonable basis to believe that the copyright owners of the materials authorized their release. But Thal emphasizes that the users did not know that "it is Malibu Media itself which is pretending to share its works." As such, the users cannot reasonably have been under the impression that that the materials were "free to download . . . without consequence." The Court therefore rejects the assertion that Malibu Media's actions "have the capacity to deceive and have deceived BitTorrent users" in the manner Thal alleges.

Thal also argues that "it is inherently unfair to pretend to give something away for free, and then once someone has accepted it, force them to pay." By focusing on Malibu Media's conduct, rather than the impressions of BitTorrent users, Thal may have stated a viable affirmative defense in the form of an implied license. *See, Malibu Media, LLC v. Doe,* No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, at *14-15 (N.D. Ill. June 9, 2014) (stating that "[a] non-exclusive license may be implied by the conduct of the copyright holder" and refusing to strike an affirmative defense of implied license when the defendant alleges that an agent of Malibu Media "'seeded' Malibu's content onto BitTorrent and thereby invited others to download it"). He has not, however, stated an ICFA claim because BitTorrent users could not have been "entrapped," unfairly or otherwise, into downloading the copyrighted works. In particular, it can hardly be said that BitTorrent users had "little alternative" except to download Malibu Media's pornographic movies simply because the movies were available on BitTorrent.

In fact, the unfairness that Thal complains of – his having to pay an "extortionate settlement amount" or incur "the expense and aggravation of having to defend a federal lawsuit" – relates directly to the copyright infringement suit rather than the availability of the content on BitTorrent. Thal has not,

however, made any plausible allegations as to why the suit brought against him, as opposed to conduct occurring prior to the suit, is unfair. Specific to the lawsuit, Thal only alleges that "Malibu Media intentionally and deceptively omits from its copyright infringement complaint records of additional, earlier downloads of digital pieces of Malibu Media works from a targeted IP Address, in order to limit potential affirmative defenses that defendants can raise." Having pled eleven affirmative defenses, he does not explain what other affirmative defense was foreclosed him because of Malibu Media's omissions.

In short, Thal's counterclaim has not alleged what is unfair about Malibu Media's litigation conduct in this case. *Cf. In re BitTorrent Adult Film Copyright Infringement Cases,* 296 F.R.D. 80, 89-92 (E.D.N.Y. 2012) (finding Malibu Media's actions against a mass number of John Doe defendants improper and likely abusive); *Malibu Media, LLC v. Doe,* No. 13-C-536, 2013 U.S. Dist. LEXIS 176701 (E.D. Wis. Dec. 12, 2013) (sanctioning Malibu Media for attaching to its complaint an exhibit containing works bearing "crude, obscene, and pornographic" titles that "that do not correspond to the copyrights-in-suit").

Because the Court dismisses Thal's ICFA claim on the ground that it has not stated any deceptive or unfair conduct, the

Court does not address Malibu Media's alternative argument that there were inadequate factual allegations under Rule 9(b).

### D.  Applicability of the IDTPA

In its late-filed reply brief, Malibu Media for the first time raises the argument that the IDTPA claim should be dismissed for failure to seek injunctive relief or allege likelihood of future harm.  The two arguments are intertwined since "[t]o be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause [him] to suffer damages in the future."  *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.,* 392 Ill. App. 3d 1, 9 (2009).

The Court is inclined to agree with Malibu Media that Thal has not stated a cognizable claim under the IDTPA.  Thal has not responded to Malibu Media's attack despite expressly being given permission to do so.  From the Court's own research, it appears that damages are not available under the IDPTA and therefore the sole remedy under the statute is injunctive relief.  *See, Glazewski v. Coronet Ins. Co.,* 108 Ill. 2d 243, 251-53 (1985) and *Kljajich v. Whirlpool Corp.,* No. 15 C 5980, 2015 U.S. Dist. LEXIS 128972, at *15-16 (N.D. Ill. Sep. 25, 2015) (collecting cases in support of the proposition).  As Malibu Media correctly

points out, Thal has not requested injunctive relief in his counterclaim.

Even if the Court were to interpret Thal's catch-all prayer for "such additional and further relief as the Court deems just and proper" as a request for equitable relief, Thal has not pled facts showing that he is likely to suffer future harm so as to make injunctive relief appropriate. This is not to say that Thal cannot plead such facts in an amended counterclaim. Thal's alleged injury stems from his having to expend resources in defending against Malibu Media's lawsuit. Thal may be exposed to future lawsuits, and future harm, even if he now avoids Malibu Media's content on BitTorrent on the knowledge that the company "seeds" its own movies. This is because whoever used Thal's IP address to distribute Malibu Media's content may continue to do so. *See, In re BitTorrent Adult Film Copyright Infringement Cases,* 296 F.R.D. at 84-85 (explaining that "the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper"). This makes Thal's case potentially different from those where the courts have dismissed the complaints for failure to plead future harm. *Cf. Glazewski,* 108 Ill. 2d 243, 253, 255 (affirming a motion to dismiss when "[t]he plaintiffs know the problems associated with the [complained-of insurance] coverage,

- 13 -

and, armed with that knowledge, can avoid it" in the future); and *Kljajich,* 2015 U.S. Dist. LEXIS 128972, at *16-22 (dismissing an IDTPA claim when the plaintiff "now armed with knowledge of the alleged defect in the Whirlpool Ovens . . . can avoid Whirlpool products in the future should she choose to do so"). Nonetheless, the fact remains that he has not made such pleading in his current counterclaim. Therefore, the Court dismisses Thal's IDTPA claim.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Malibu Media's Motion to Dismiss Defendant's Counterclaims [ECF No. 26] is granted. The dismissal is without prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: December 15, 2016

- 14 -